**CUYLER BURK, P.C.**
Parsippany Corporate Center
Four Century Drive
Parsippany, NJ 07054-4663
Phone (973) 734-3200
Fax (973) 734-3201
Attorneys for Defendant/Counterclaimant,
Ronald M. Harstad
By: Jo Ann Burk, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL S. ROTHSTEIN, COHN LIFLAND PEARLMAN, HERMANN & KNOPF, LLP and TRIEF AND OLK,<br><br>Plaintiffs,<br><br>v.<br><br>RONALD M. HARSTAD,<br><br>Defendant. | Civil Action No. 2:10-cv-01421-WHW-CCC<br><br><br>**DEFENDANT RONALD M. HARSTAD'S ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIM AGAINST ALL PLAINTIFFS** |

Defendant RONALD M. HARSTAD ("Defendant" of "Professor Harstad"), by and through its undersigned counsel, hereby responds to the Complaint ("Complaint") filed by Plaintiffs PAUL S. ROTHSTEIN, COHN LIFLAND PEARLMAN, HERMAN & KNOPF, LLP and TRIEF AND OLK, (hereinafter "Plaintiffs") on March 18, 2010, as follows:

      1.      Admit.

      2.      Admit.

      3.      Admit.

      4.      Admit.

      5.      Admit.

      6.      Admit.

7.      Admit.

8.      Admit.

9.      Admit that the litigation involved AT & T prepaid phone cards. Defendant has insufficient information to admit or deny the other allegations in this paragraph.

10.     Admit.

11.     Defendant is without sufficient knowledge to admit or deny the allegations in this paragraph.

12.     Admit.

13.     Admit.

14.     Admit.

15.     Deny.

16.     Deny.

17.     Deny.

18.     Deny.

19.     Deny.

20.     Deny.

21.     Admit.

22.     Deny.

23.     Deny.

24.     Deny.

25.     Deny that Defendant's work was deficient. Defendant has insufficient information to admit or deny any other allegations in this paragraph.

26.     Admit.

27.     Admit that Plaintiffs contend they have paid. Deny the truth of that assertion.

28.     Admit.

29.     Admit.

30.     Deny.

Defendant requests a **JURY TRIAL** in this matter.

**AFFIRMATIVE DEFENSE**

Plaintiffs' Claim is barred by the Statute of Limitations.

**COUNTERCLAIM**

NOW COMES Dr. Ronald M. Harstad (hereinafter "Professor Harstad" or "Defendant"), by and through his counsel of record, and files this Counterclaim against Plaintiffs, Paul S. Rothstein, P.A., Cohn Lifland Pearlman Herrmann & Knopf, LLP, and Trief and Olk, LLP, before this Court and alleges upon information and belief as follows:

**PRELIMINARY STATEMENT**

1.     This dispute arises out of the wrongful actions of the Plaintiffs, who have refused to pay Professor Harstad certain expert witness fees due under an expert witness services contract with the Plaintiffs.

**STATEMENT OF CASE**

2.     Professor Harstad is the J. Rhoads Foster Professor of Economics of Regulated Industries at the University of Missouri in Columbia, Missouri.

3.     Professor Harstad's field of expertise encompasses Game Theory, Microeconomic Theory, Laboratory Economics, Value Elicitations, Industrial Organization, Financial Markets and Operations Research.  *See* Exhibit 1.

4.     On several occasions, Professor Harstad has served as an expert witness and/or a consultant and has provided expertise on economic valuation of commodities and services and the terms under which they are provided, based in part, on his research and scholarly knowledge in auction design, market-making, competition in electronic marketplaces, eliciting values for projects or new products, and damage assessments.  A listing of some cases in which he has provided expert testimony is included in Exhibit 1.

5.     On or about May 22, 2006, Professor Harstad was retained by Plaintiffs as an expert witness in a pending class action, captioned *Yariv v. AT&T and Sam's Club*, Superior Court of New Jersey, Law Division, Somerset County, Docket No. SOM-L-272-05 (hereinafter, "*Yariv*").

6.     Professor Harstad's skill and expertise were crucial to the *Yariv* case because of the massive amounts of data that needed to be organized and analyzed.

7.     On or about May 22, 2006, Professor Harstad and Plaintiff Rothstein spoke via telephone and agreed on specific terms and provisions that would govern their contractual relationship, as summarized in a letter from Professor Harstad to Plaintiff Rothstein (hereinafter the "Contract").  *See* Exhibit 2.

8.     On or about June 16, 2006, Plaintiff Rothstein and Professor Harstad agreed on minor modifications to the terms of the Contract.

9.     The Contract provided for payment of Professor Harstad's expert services at a rate of $600.00 per hour, to be paid in installments over time.  *See* Exhibit 2.

10.    On or about May 22, 2006, Professor Harstad began to receive specific assignments and projects from Plaintiff Rothstein, and commenced his work and submitted the invoices for payment per the Contract.

11.    Plaintiff Rothstein sent payments for the invoices to Professor Harstad's residence.

12.    On or about June 16, 2006, Dr. Harstad was informed that Plaintiffs Pearlman and Trief had joined the *Yariv* case as additional counsel, and soon thereafter, Plaintiffs Pearlman and Trief also began to contact Professor Harstad with assignments and projects for the *Yariv* case.

13.    After providing direction for assignments and projects as noted above, Plaintiffs Pearlman and Trief sent payments for part of the invoices submitted by Professor Harstad, to his residence.

14.    Pursuant to the terms of the Contract, when Plaintiffs did not make timely payments, Professor Harstad added interest to the subsequent invoices.

15.    Plaintiffs stated to Professor Harstad that they were satisfied with his work product, and continued to give him additional assignments.

16.    Professor Harstad conducted the majority of his research and work for the *Yariv* case in Columbia, Missouri.

17.    From May 2006 through September 2008, Professor Harstad submitted invoices for the months in which he spent time working for Plaintiffs.  Some invoices were paid in full while others were not.

18.    On or about July 14, 2008, Plaintiff Pearlman directed Professor Harstad to undertake an assignment that required more in-depth research and analysis than what was previously required.  Over the next five months, assignments given to Professor Harstad, principally through phone calls and teleconferences, that were increasingly intricate and required gathering data from a massive database provided by Plaintiffs on several CDs and DVDs.

19.     Invoices for the months of October, 2008 and November, 2008, were combined into a single submission, which was prepared and sent to Plaintiffs on December 21, 2008.  *See* Exhibit 3.

20.     On December 29, 2008, at the request of Plaintiffs, Professor Harstad sent an invoice for work done between December 1 and 28, 2008.  *See* Exhibit 4.

21.     Plaintiffs have refused to pay any of the last three invoices.

**FIRST CAUSE OF ACTION – BREACH OF CONTRACT – ALL PLAINTIFFS**

22.     Paragraphs 1-22 are incorporated herein as if fully restated.

23.     Pursuant to the terms of the Contract, Plaintiffs were required to timely compensate Professor Harstad for his services.  *See* Exhibit 1.

24.     Upon receiving projects and assignments from Plaintiffs, Professor Harstad performed the required work which was accepted by Plaintiffs.

25.     Although Plaintiffs accepted and benefitted from the work product of Professor Harstad, they have refused to honor the Contract.

26.     As a result of the Plaintiffs' breach, Professor Harstad has suffered damages of over $236,000.00 plus interest under the Contract, as well as attorneys' fees spent attempting to collect the amount owed.

**SECOND CAUSE OF ACTION – UNJUST ENRICHMENT – ALL PLAINTIFFS**

27.     Paragraphs 1-26 are incorporated herein as if fully restated.

28.     Professor Harstad conferred a benefit on Plaintiffs by conducting a detailed and rigorous analysis of the data necessary to establish the damages in the *Yariv* case.

29.     Plaintiffs have been the beneficiaries of all of the research conducted by Professor Harstad, including the work commissioned and submitted between October and December 2008.

30.     Plaintiffs accepted the work of Professor Harstad for those three months, as well as other work performed before October 2008, and retained that benefit without payment to Professor Harstad.

31.     Plaintiffs' retention of this benefit without properly compensating Professor Harstad would be unjust.

32.     As a direct and proximate result of the Plaintiffs' actions, Professor Harstad has suffered damages of over $236,000.00 plus interest under the Contract, as well as attorneys' fees spent attempting to collect amounts owed.

## JURY TRIAL DEMAND

Defendant/Counterclaimant respectfully requests a trial by jury on this matter.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant respectfully requests that:

a.     the Court grant judgment in Defendant/Counterclaimant's favor;

b.     the Court award compensatory damages;

c.     the Court award attorneys' fees and costs incurred by Defendant/ Counterclaimant in pursuing this lawsuit as available under New Jersey state law; and

d.     the Court award any other damages and any other relief it deems just and equitable.

Respectfully submitted,

Dated:  August 31, 2010

*s/Jo Ann Burk*_____
JO ANN BURK
**CUYLER BURK, P.C.**
Attorneys for Defendant/Counterclaimant,
Ronald M. Harstad

# Exhibit 1

*BACKGROUND DOCS*

# Ronald M. Harstad

## Curriculum Vitae

August 2009

### *Coordinates*:

HarstadR@missouri.edu,  http://harstad.missouri.edu, Voice:  573.882.3299;  Fax:  573.882.3406

Postal: Economics Dept., Professional Bldg., Univ. of Missouri, Columbia, MO 65211 USA

### *Education*:

University of Pennsylvania: Ph.D. in Economics, 1977

Michigan State University: B.S. (mcl) in Economics and the Honors College, 1973

### *University of Missouri*:

J Rhoads Foster Professor of the Economics of Regulated Industries,
Economics Department, College of Arts and Science, 2004-

### *Research Fields* (*Journal of Economic Literature* classifications):

Game Theory, Auctions, Laboratory Economics, Value Elicitations (C7, C9, D4, D8, H4, L1)

### *Teaching Specialties*:

Game Theory, Microeconomic Theory, Laboratory Economics, Industrial Organization, Financial Markets, Operations Research

### *Selected Consulting*:

Bidding consultant for radio spectrum auctions, SBC Communications, (FCC PCS MTA, 1994-95) and SBC/BellSouth/Cingular (700 MHz, 2000)

Consultant on auction design, market-making, competition in electronic marketplaces, eliciting values for projects or new products, damage assessments, agenda control on e-commerce websites

### *Selected Impact*:

US Federal Communications Commission cites only two research articles on auctions as being specific enough to directly provide assistance in designing airwaves auctions (PP

Docket 93-293); I co-authored both articles (working papers with M. H. Rothkopf later published in *OR* and *EJOR*, listed below).

## Research Grants:

1997 Co-Principal Investigator, National Science Foundation grant, SBR 97-09861, "Transactions Costs in Auctions," (with M. H. Rothkopf), funded for two years.

1993 Co-Principal Investigator, National Science Foundation grant, SBR 93-09333, "Enriched Modeling of Auctions and Bidding," (with M. H. Rothkopf).

1991 Co-Principal Investigator, National Science Foundation grant, SES 91-08551, "Enriched Modeling of Auctions and Bidding," (with M. H. Rothkopf), funded for two years.

1984 Co-Principal Investigator, National Science Foundation grant, IST 84-08396, "The Role of Information and Information Processing in Auctions: Theory and Experimentation," (with J. H. Kagel and D. Levin), funded for two years.

1979 Project Director, National Science Foundation grant, SES 79-15356, "Interactive Behavior Experimentation," (with J. K. Murnighan, A. E. Roth, F. Schoumaker), renewed 1980, 1981, 1982.

## Publications:

Top journals included in publications: *Econometrica, Review of Economic Studies, Journal of Economic Theory, Journal of Political Economy, Rand Journal of Economics, Games and Economic Behavior, Operations Research, Management Science*

## Refereed Articles:

"Relevance to Practice and Auction Theory: A Memorial Essay for Michael Rothkopf" (with A. Pekec) *Interfaces*, 38 (2008), 367-380 (pdf).

"Does a Seller Really Want Another Bidder?" *Applied Economics Research Bulletin*, (2008), 1st article published (pdf).

"Information Aggregation in Auctions with an Unknown Number of Bidders" (with A. Pekec and I. Tsetlin), *Games and Economic Behavior*, 62 (2008), 476-508 (pdf).

"Ex-Post Full Surplus Extraction, Straightforwardly" (with V. Mares), *Economic Theory*, 32 (2007), 399-410 (pdf).

"Experimental Methods and Elicitation of Values" (with G. W. Harrison and E. E. Rutstrom), *Experimental Economics*, 7 (2004), 123-140 (pdf).

"Private Information Revelation in Common-Value Auctions" (with V. Mares), *Journal of*

*Economic Theory*, 109 (2003), 264-282 (pdf).

"Is Subsidizing Inefficient Bidders Actually Costly?" (with M. H. Rothkopf and Y. Fu), *Management Science*, 49 (2003), 71-84 (pdf).

"Dominant Strategy Adoption and Bidders' Experience with Pricing Rules," *Experimental Economics,* 3 (2000), 261-80 (pdf).

"An Alternating Recognition Model of English Auctions" (with M. H. Rothkopf), *Management Science*, 46 (2000), 1-18 (pdf).

"Franchise Bidding without Holdups: Utility Regulation with Efficient Pricing and Choice of Provider" (with M. A. Crew), *Journal of Regulatory Economics*, 15 (1999), 141-63 (pdf).

"Computationally Manageable Combinational Auctions" (with M. H. Rothkopf and A. Peke•), *Management Science*, 44 (1998), 1131-47 (pdf).

"Auction Form Preferences of Risk-Averse Bidtakers" (with K. Waehrer and M. H. Rothkopf), *Rand Journal of Economics*, 29 (1998), 179-92 (pdf).

"Withdrawable Bids as Winner's Curse Insurance" (with M. H. Rothkopf), *Operations Research*, 43 (1995), 983-94 (pdf).

"Comparative Static Effects of Number of Bidders and Public Information on Behavior in Second-Price Common-Value Auctions" (with J. H. Kagel and D. Levin), *International Journal of Game Theory*, 24 (1995), 297-319 (pdf).

"Two Models of Bid-Taker Cheating in Vickrey Auctions" (with M. H. Rothkopf), *Journal of Business*, 68 (1995), 257-67 (pdf).

"Privately Informed Seekers of an Uncertain Rent," *Public Choice*, 83 (1995), 81-93 (pdf).

"Modeling Competitive Bidding: A Critical Essay" (with M. H. Rothkopf), *Management Science*, 40 (1994), 364-84 (pdf).

"On the Role of Discrete Bid Levels in Oral Auctions" (with M. H. Rothkopf), *European Journal of Operational Research*, 74 (1994), 572-81 (pdf).

"Asymmetric Bidding in Second-Price, Common-Value Auctions," *Economics Letters*, 35 (1991), 249-52 (pdf).

"Alternative Common-Value Auction Procedures: Revenue Comparisons with Free Entry," *Journal of Political Economy*, 98 (1990), 421-29 (pdf).

"Equilibrium Bid Functions for Auctions with an Uncertain Number of Bidders" (with J. H. Kagel and D. Levin), *Economics Letters*, 33 (1990), 35-40.

"Information Impact and Allocation Rules in Auctions with Affiliated Private Values: A Laboratory Study" (with J. H. Kagel and D. Levin), *Econometrica*, 55 (1987), 1275-1304 (pdf).

"Symmetric Bidding in Second-Price, Common-Value Auctions" (with D. Levin), *Economics Letters*, 20 (1986), 315-19.

"A Class of Dominance Solvable Common-Value Auctions" (with D. Levin), *Review of Economic Studies*, 52 (1985), 525-28 (pdf).

"Behavioral Explanations of Efficient Public Good Allocations" (with M. Marrese), *Journal of Public Economics*, 9 (1982), 367-83 (pdf)."Implementation of Mechanisms by Processes: Public Good Allocation Experiments" (with M. Marrese), *Journal of Economic Behavior and Organization*, 2 (1981), 129-51.

"Expected-Utility-Maximizing Price Search with Learning" (with A. Postlewaite), *Management Science*, 27 (1981), 75-80 (pdf).

## *Contributions to Refereed Volumes*:

"Futures Market Speculation When You Don't Know Who the Optimists Are" (with L. Phlips), pp. 63-78 in: W. Albers, W. Güth, P. Hammerstein, B. Moldovanu and E. van Damme (eds.), *Understanding Strategic Interaction - Essays in Honor of Reinhard Selten*, Springer, Heidelberg, 1996.

"Efficiency and Incentive Compatibility When Bidders Have Private Information about Competitors" (with M. H. Rothkopf and K. Waehrer), pp. 1-13 in: M. R. Baye (ed.), *Advances in Applied Micro-Economics*, Volume 6, *Auctions*, JAI Press, Greenwich, Ct., 1996 (pdf).

"Lottery Qualification Auctions" (with R. F. Bordley), pp. 157-83 in: M. R. Baye (ed.), *Advances in Applied Micro-Economics*, Volume 6, *Auctions*, JAI Press, Greenwich, Ct., 1996 (pdf).

"Common-Value Auctions with Independent Information: A Framing Effect Observed in a Market Game" (with W. Albers), pp. 308-36 in Volume II of: R. Selten (ed.), *Game Equilibrium Models*, Springer, Berlin, 1991 (pdf).

"Interaction Between Resource Extraction and Futures Markets: A Game-Theoretic Analysis" (with L. Phlips), pp. 289-307 in Volume II of: R. Selten (ed.), *Game Equilibrium Models*, Springer, Berlin, 1991 (pdf).

"Perfect Equilibria of Speculative Futures Markets" (with L. Phlips), pp. 157-74 in J. J. Gabszewicz, J.-F. Richard and L. A. Wolsey (ed.), *Economic Decision-Making: Games, Econometrics and Optimisation - Contributions in Honour of Jacques Dreze*, Elsevier Science Publishers, 1990 (pdf).

## *Contributions to Scholarly Volumes*:

"Experimental Tests of Consciously Parallel Behaviour in Oligopoly," (with S. Martin and H.-T. Normann), in L. Phlips (ed.), *Applied Industrial Economics*, Cambridge University Press, 1997 (pdf).

### Publications in an Editorial Capacity:

"Laboratory Investigations of Expectations in Games: The Amsterdam Papers," *International Journal of Game Theory*, 25 (1996), Issue 3.

"Introduction to Methods, Morals and Markets," pp. 3-8 in Volume II of: R. Selten (ed.), *Game Equilibrium Models*, Springer, Berlin, 1991.

### Contributions to Conference Volumes:

"Franchise Bidding with Vickrey Auctions" (with M. A. Crew), pp. 117-30 in M. A. Crew (ed.), *Innovative Approaches to Utility Regulation*, Kluwer Academic Publishers, 1992 (pdf).

"Dual Ceteris Paribus Comparisons: Some Initial Thoughts on Laboratory Isolation of Equilibrium Forces in Auction Markets," pp. 173-83 in: R. Tietz, W. Albers and R. Selten (ed.), *Modeling Bounded Rational Behavior in Experimental Games and Markets*, Springer, Berlin, 1988.

### Auction Design Proposal Published in the Public Docket:

"A Blueprint for a Multi-Round Auction with Package Bidding," in FCC DA 00-1075 (2000) (pdf).

### Selected Reports :

"The Economic Impact of the University of Missouri System" with J. Haslag (2007) (pdf).

### Submitted Manuscripts :

"Auctioning Rights to Choose When Competition Persists," resubmitted to *Decision Analysis* (pdf).

"Winner's Curse Corrections Magnify Adverse Selection" with R. F. Bordley.

"Information Variability Impacts in Auctions" with J. Z. Jia and M. H. Rothkopf.

### Work in Progress:

"Endogenous Competition Alters the Structure of Optimal Auctions."

"Normative Evaluation of Experimental Markets"

### Citations (as of 10/2008):

511 citations in social science journals since 1990 (web of science, incomplete for law, math, biology)

Older SSCI lists show 169 citations 1977-1989

500+ citations in computer science literature (citeseer.ist.psu.edu, almost no overlap)

1619 citations in Google Scholar (includes 4th most frequently cited article in Google Scholar search for "competitive bidding" and 12th for "auctions")

Also, 54 citations in Google Books (plus 101 in Google Books archives, probably some overlap)

16,000 websites cite my research or acknowledge my contributions (Google search)

(Includes cites on webpages in nations ranging from *.au to *.za)

1400+ acknowledgments in major scholarly journals

## Refereeing:

Associate Editor, *European Economic Review*, 2003-07

Autonomous Area Editor, "Games and Experiments", *International Journal of Game Theory*, 1995-2001

International Editor, Center for Interdisciplinary Research, University of Bielefeld, Germany, 1988-91

Referee or editor for over 1500 submissions to 35 scholarly journals and for 70 research proposals to national science foundations of six nations

## Prior Appointments:

1993-2004 Rutgers University
Professor of Economics and Finance, Rutgers Business School; Senior Research Fellow, RUTCOR (Rutgers Center for Operations Research)

1987-1993 Virginia Commonwealth University
Associate Professor of Economics

1983-1987 University of Houston
Assistant Professor of Economics

1981-1983 Texas A & M University
Assistant Professor of Economics

1977-1981 University of Illinois at Urbana-Champaign
Assistant Professor of Economics

## Temporary Appointments:

2003,Spring Washington University in St. Louis
Visiting Professor, Olin School of Business

2002-2003 Duke University
Visiting Research Professor, Fuqua School of Business

2001-2002 Duke University
Visiting Professor, Fuqua School of Business

1995-1996 University of Virginia
Visiting Research Professor of Economics

1995, Fall University of Bonn, Germany
Visiting Research Professor of Economics (SFB 303)

1993,Spring University of Bonn, Germany
Visiting Research Professor of Economics (SFB 303)

1992-1993 University of Mississippi
Visiting Associate Professor of Economics and Finance

1988,Spring University of Bielefeld, Germany
Guest Scientist, Center for Interdisciplinary Research

1980-1981 University of British Columbia
Visiting Assistant Professor of Economics

### *Selected Honors and Awards*:

Keynote speaker, Inauguration of the Center for Economic Theory and Behavior, University of Magdeburg, October 2004

Keynote speaker, First Annual Bank of Austria Conference on E-Commerce, Charles University, Prague, March 2001

Rene Roy – Edmond Malinvaud Lecturer, CNRS, Ecole du Ponts e Chausees, Paris, April 1988

### *Official Positions in Scholarly Organizations*:

MISSEL (Missouri Social Science Experimental Laboratory, Washington University in St. Louis)
        Co-Organizer, Inaugural Experimental Economics Conference, October 2008

INFORMS (Institute for Operations Research and Management Sciences)
        Co-Organizer, Michael Rothkopf Memoral Conference, June 2009
        Program Committee Member, .1994, 1997, 1999, 2001

Deutsche Forschungsgemeinschaft, Sonderforschungsbereich 303
(German National Science Foundation, Special Research Area 303):
        Program Committee Member, International Workshop on Bounded Rationality, 1997.

Economic Science Association:
        Member, Task Force on the Creation of a Journal of Experimental Economics, 1991-93

Econometric Society:

Program Committee Member, 1983 Winter Meetings and 1979 Summer Meetings

Public Choice Society:
Program Committee Member, 1980 and 1981 Annual Meetings

Midwest Mathematical Economics Society:
Conference Organizer, Fall 1978 Meetings

### *Dissertation Supervision*:

Supervisor, co-supervisor or dissertation committee member in the last eighteen years for 32 Ph.D. students at universities in four nations

Placed or co-placed students at Duke University, Northwestern University, Washington University in St. Louis, University of Texas, Vanderbilt University, University of Copenhagen, Humboldt University-Berlin, University Pompeu Fabra in Barcelona

### *Selected Administrative Experience*:

Economic advisor to the President, University of Missouri System, 2007-.

Elected to Faculty Council, University of Missouri, 2006-7.

Member, Chancellor's Advisory Committee, Univeristy of Missouri, 2005-.

External reviewer for endowed chair candidate evaluation (once), for promotion to full professor (5 times), for tenure (12 times), across three nations.

Member of search committee for endowed chair search, twice, and nominating committee for endowed chair, five times, University of Missouri.

Chair of faculty recruiting committee, 3 years, member, 21 years.

Parliamentarian, Rutgers Business School, 1999-2001.

Director, experimental lab, VCU, 1987-90; Houston, 1983-87, Illinois, 1977-81.

Member, Committee to draft By-laws for first US Institutional Review Board, University of Illinois, 1979-80.

### *Teaching Experience*:

Both Graduate and Undergraduate: Microeconomic Theory, Mathematical Economics, Experimental Economics, Game Theory, Industrial Organization, Public Finance, Managerial Economics.

Graduate: Probability and Statistics, Understanding Innovation in Financial Markets, Operations Research, Modeling and Analyzing Auctions and Bidding.

Undergraduate: Intermediate Microeconomics, Microeconomic Principles, Economics of Regulation.

# Exhibit 2

**Ronald M. Harstad, Ph.D.**
108 Haywood Court
Columbia, MO 65203-0291 USA
1.573.446.2056
HarstadR@missouri.edu

May 22, 2006

Paul S. Rothstein, Esq.
626 NE First Street
Gainesville, Florida 32601

      Cause:  Yariv v. AT&T

Paul:

    I recommend the following elaboration of our arrangements for me to provide expert witness work product in this cause.  Initially, I acknowledge receipt of the case acceptance fee of $3,000, which does not buy time, but gives you the right to have me reasonably place other work aside to work on this cause in an expedited fashion.  Moreover, it gives you the right to clear other expert-witness jobs where I may be approached:  you can within reason ask me to refrain from accepting other cases where there is a legitimate concern that expert opinions rendered in that case may undermine the consistency of position that I am providing in this case.  Your opportunity to seek such right to clear extends only so long as $1,500/month compensation for time accrues during successive months.  You may continue to exercise this option by having billable hours accrue during a month for services to be performed in future months.  If my services should no longer be used in this cause, such accrued hors are still due me.

    Compensation for out-of-pocket expenses:  to be paid in full within 20 days of provision of itemized billing.  I will make efforts to keep expenses reasonable, with the understanding that expedited handling of matters is typically a more important issue than minimization of out-of-pocket expense minimization.

    Compensation for time:  the $600/hour fee is in addition to compensation for expenses. I will provide monthly logs, for any month when I spent time on this cause, showing the amount of time spent each day, with a rough summary of how that time was spent.  You may, of course, pay compensation for time when logs are received.

    However, to work with you in pursuit of this case, I recommend the following options: One-third of compensation for time is due within three months of being sent monthly logs. During this time, compensation for time accrues without interest.  Any compensation for time that is outstanding beyond three months accrues interest from then on at the rate of 1.5%/month.

    Within eight months of being billed for compensation for time, an additional one-third (plus accrued interest thereon) will be paid, leaving only the last one-third to be outstanding for a longer period of time than eight months.

    All outstanding compensation is to be settled within two months of the resolution of the cause, whatever that resolution may be.  Moreover, if at any time, I come to have reason to doubt your financial ability to meet your obligations here, at my discretion, all amounts owed become due and payable immediately.

A secondary issue is subcontracting.  I propose that I hire as independent contractors a graduate student and an undergraduate student to assist in my work on this cause.  Payments to them would be considered out-of-pocket expenses.  They would be paid $50/hour and $15/hour, respectively.  Each would only be used when I am confident that, without risk of loss of quality of the work products I provide herein, their time could be substituted for mine at a considerable savings to you.  I would have the graduate student see how I made calculations with respect to one aspect (e.g., damages associated with calls to Israel), and then have him make corresponding calculations with regard to each other corresponding aspect (e.g., with respect to calls to Mexico), for my review before sending to you or incorporating in a report or brief.  Either might be asked to look up economic data that could be relevant to damage calculations; the undergraduate student might undertake some clerical tasks.  I propose that within a budget I be allowed to assign them tasks and pay for their time completing those tasks.  I suggest that $1,000 be budgeted initially for the graduate student, and $600 for the undergraduate student; if these limits are being reached, I will discuss with you what to do further.

Cordially,

Ron

# Exhibit 3

**Ronald M. Harstad, Ph.D.**
108 Haywood Court
Columbia, MO 652030291 USA
1.573.446.2056
HarstadR@missouri.edu

December 21, 2008

Yariv v. AT&T, for Paul S. Rothstein and colleagues

Log of Time Spent:  October and November, 2008

| Date | Activities | Hours |
|---|---|---|
| 3-Oct | Reorganize files, call w/ programmers | 1.6 |
| 4-Oct | Get solitary call notes file, next steps | 7.1 |
| 5-Oct | Review by-month, prepare chosen rates 1 | 8.2 |
| 7-Oct | Conf call, send next steps, meet w/programmers, get, study several files | 6.6 |
| 8-Oct | Study data patterns, deal w/ queries, get files, send next steps | 6.0 |
| 9-Oct | Get files, study data patterns, meet w/programmers, 2*send next steps | 10.2 |
| 10-Oct | Study data patterns, phone call w/ programmer | 1.9 |
| 11-Oct | Get files & query, glance over, reply, compile data from 2 files | 3.3 |
| 12-Oct | Get files & queries, study data patterns, reply | 3.1 |
| 13-Oct | Deal w/queries, get "multiple PLCs" codes, get files, examine | 4.5 |
| 14-Oct | Formulate, draft, send 'caprice' email, get 3 files from programmers, send next steps, conf call, get next steps file, study data patterns, reply | 11.4 |
| 15-Oct | Get FedEx w/payphones data, study, email, meet w/ programmers, emails w/lawyers, reorganize to-do list in view of payphone data | 7.6 |
| 16-Oct | Phone call w/programmers | 0.3 |
| 20-Oct | Payphone data decisions, emails w/lawyers, programmers | 1.4 |
| 21-Oct | Meet w/programmers, conf call | 2.1 |
| 23-Oct | Get 5 big files, deal w/queries, study data patterns | 5.7 |
| 24-Oct | Provide itinerary, get deposition pages | 0.9 |
| 25-Oct | Review deposition pages, rethink payphone data, inform programmers | 3.3 |
| 26-Oct | Study files, add to notes on next steps | 5.2 |

| 27-Oct | Many emails w/lawyers, programmers, review files, deal w/queries, send next steps, get next files, organize, study data patterns | 8.7 |
| 28-Oct | Review files, study data patterns, send another set of next steps | 5.2 |
| 31-Oct | Emails w/lawyers, programmers, phone call w/programmer | 1.1 |
| 1-Nov | Emails w/programmers, study data patterns | 0.9 |
| 2-Nov | Study data patterns | 1.6 |
| 3-Nov | Get large file, study data patterns, deal w/queries | 3.6 |
| 4-Nov | Get large file, study data patterns, deal w/queries, send next steps | 2.9 |
| 5-Nov | Get large file, study | 1.2 |
| 6-Nov | Email from lawyers, study data patterns, arrange for communication | 2.1 |
| 7-Nov | Emails w/lawyers, several w/ programmers, send next steps, get large file, study data patterns, start formulating chosen rates file | 5.8 |
| 8-Nov | Formulate, request big run thru data | 2.6 |
| 9-Nov | Get big file, study data patterns | 3.8 |
| 10-Nov | Send next steps, get big files, study data patterns, send followup steps, send intended rates report to lawyers | 8.9 |
| 11-Nov | Arrange, make conf call, get partial final run from programmers, study, send programmers queries | 4.6 |
| 12-Nov | Get more of final run, deal w/ queries, study some | 2.5 |
| 13-Nov | Study data patterns | 4.6 |
| 14-Nov | Develop, request programming adjustments | 0.7 |
| 15-Nov | Get 2 big files, some more final run, glance over | 0.7 |
| 16-Nov | Study files, figure, request programming adjustments, receive files, glance over | 2.9 |
| 17-Nov | Piece together final run, compile data for & write report | 9.6 |
| 18-Nov | Emails w/lawyers, programmers | 1.3 |
| 19-Nov | Emails w/lawyers | 0.5 |
| 20-Nov | Sort, compose email w/ programmers re annual numbers needs | 1.6 |
| 21-Nov | Emails w/lawyers, programmers, adjust annual numbers request | 1.4 |
| 22-Nov | Receive 3 big files, study reports of inputs for annual numbers | 2.6 |
| 23-Nov | Organize, compile numbers for annual minutes-based damage numbers, send report in lengthy email to lawyers | 8.8 |

| 25-Nov | Study per-call usage data for individual PIN identifiers, email to lawyers explaining limits of this data with respect to requested analysis | 2.1 |
| 26-Nov | Meet w/programmers, emails | 1.8 |
| Total | | 184.5 |

184.5 hours at $600:   $110,700  (2/3$^{rds}$ of $110,700 = $73,800; 1/3rd of $110,700 = $36,900)

    Out-of-pocket expenses:
Programming development and supervision, Mark Ehlert, Nov. 26      $2,000.00
Programmer, Jonathan Mills, Nov. 7 (for October)      475.00
Programmer, Jonathan Mills, Nov. 26      500.00
USB drive to backup & move Yariv files between computers      16.11
Email access at O'Hare airport:      7.95
Acquire email access, Nov. 6-18, 20-23:      254.00
Call in for conference call on Nov. 11:      49.86
     Total, out-of-pocket expenses      $3,302.92

Receipts for programming assistance are being mailed to Paul Rothstein.

    The status of this account: three checks, each for $9,840.29 were received on October 24th and 29th, and on November 26th. They leave $107.10 in interest due.

    Also, $10,980 (the second 1/3rd of the August statement) was due December 1. As of December 31, this will have accumulated $164.70 in interest. (The string of consecutive failures to pay the second 1/3rd in a timely manner continues unabated.)

    If you prefer to continue the system of paying the second 1/3rd delayed, that would mean $51,454.72 (= $36,900 + $3,302.92 + $107.10 + $10,980 + $164.70) due now, with $36,900 due the beginning of February. (It would simplify my accounting and taxes if these amounts are received in 2008; to the extent that this reduces the $164.70 in interest, I will give you credit on the next statement.) If you wish to avoid continuing to have late payments of the second 1/3rd draw interest, you could satisfy that by sending checks totaling $88,354.72 by January 10th.

# Exhibit 4

**Ronald M. Harstad, Ph.D.**
108 Haywood Court
Columbia, MO 652030291 USA
1.573.446.2056
HarstadR@missouri.edu

December 29, 2008

Yariv v. AT&T, for Paul S. Rothstein and colleagues

Log of Time Spent: December 1-28, 2008

| Date | Activities | Hours |
|---|---|---|
| 1-Dec | Reorganize files, call w/ programmers | |
| 2-Dec | Conf call & prep, contacts re hiring research assistant (RA) | 1.3 |
| 3-Dec | Email, meet w/RA, organize system to put chosen rates from per-call into cardtype files, get started on doing so | 10.4 |
| 4-Dec | Emails w/RA, input chosen rates, slow going | 5.7 |
| 5-Dec | Emails w/RA, develop shortcut for monthly reports with W, S cards | 9.4 |
| 6-Dec | Meet w/RA, show her shortcut for monthly reports, input rates, email lawyers | 6.5 |
| 7-Dec | Develop shortcut for monthly reports, email, meet w/RA, input daily reports | 8.6 |
| 8-Dec | Finish inputting chosen rates, compile data from monthly, daily reports, email lawyers | 11.1 |
| 9-Dec | Emails, conf call, work on annual excess decrements numbers | 4.8 |
| 10-Dec | Work on annual decrements numbers | 3.1 |
| 11-Dec | Finish annual decrements numbers, compile into excel file, email, look at deposition pages sent | 8.5 |
| 12-Dec | Develop method for comparing per-call minutes with monthly, daily minutes, study deposition pages sent | 4.0 |
| 14-Dec | Compile per-call minutes with monthly comparison, write, send report | 5.8 |
| 15-Dec | Compile data, write report on accuracy of LaCava deposition explanations, emails | 3.4 |
| 16-Dec | Emails, conf call | 0.9 |
| Total | | 83.5 |

83.5 hours at $600:   $50,100  (2/3$^{rds}$ of $50,100 = $33,400; 1/3rd of $$50,100 = $16,700)

Out-of-pocket expenses:

Research Assistant, Dianne Delbert (receipt being sent to Paul R)    $450.00
Total, out-of-pocket expenses    $450.00

Out-of-pocket expenses:

|  |  |
|---|---|
| October-November: | $3,302.92 |
| December: | 450.00 |
| Total, out-of-pocket | $3,752.92 |

Time Logs:

|  |  |
|---|---|
| 2nd 1/3rd of August bill (overdue since Dec. 1)$^A$ | $11,440.70 |
| October-November: | $110,700.00 |
| December: | $50,100.00 |
| Total: | $171,944.70 |

$^A$: This equals the $10,980 plus $164.70 in interest as of Dec. 31)

Possibility:

1. Out-of-pocket expenses ($3,753) paid immediately.
2. The $171,945 to be paid in portions as follows:

|  |  |  |
|---|---|---|
| a. $42,986.25 (¼): | Received by January 15, 2009 |
| b. $42,986.25 (¼): | Received by April 1, 2009 |
| c. $42,986.25 (¼): | Received by July 15, 2009 |
| d. $42,986.25 (¼): | Received within one week of end of case |

3. Interest on late payment of portions a,b,c, to accrue at the rate of 2%/month, beginning as of the "received by" date stated above.  Of course, on-time receipt will make this interest charge $0.
4. Interest on portion d to accrue at the rate of 0.75%/month.
5. I will forego the $107.20 in interest for payments made late but prior to the October/November statement.
6. We return to the 1/3rd within 20 days, 1/3rd within 3 months, 1/3rd at end of case formula for any future month where time total less than $40,000.

Notes:       $3,753 = 3 * $1,251
             $42,986.25 = 3 * $14,328.75